# Exhibit "B"

8305782_1

RECORD & RETURN TO:
SURETY TITLE CORPORATION
1 E. STOW RD.
MARLTON, NJ 08053

COPY

Docket: 00025355 Type:MTG Pages:8
James N. Hogan, Gloucester County Clerk
Receipt#:145116   08:59:31A   Jun 26,2012
Recording Fee:    100.00  MB 13103   310

# MORTGAGE

THIS MORTGAGE is made on June 12, 2012, BETWEEN the Mortgagor(s), Hovbros Fries Mill, L.L.C., a New Jersey limited liability company, with an address at 900 Birchfield Drive, Mount Laurel, New Jersey, referred to as "**Mortgagor**", AND the Lender, TD Bank, N.A., whose address is 1701 Route 70 East, Cherry Hill, New Jersey, referred to as the "**Mortgagee**". The word "**Mortgagee**" means the original Lender and anyone else who takes this Mortgage by transfer.

THIS MORTGAGE SECURES FUTURE ADVANCES

Promissory Note.

In return for a loan ("**Loan**") that Hovbros Cinnaminson Urban Renewal, L.L.C., a New Jersey limited liability company ("**Borrower**") received, Borrower promised to pay Fourteen Million Eight Hundred Twenty Thousand ($14,820,000.00) Dollars (called "**principal**"), plus interest in accordance with the terms of a promissory note (referred to as the "**Note**") dated February 28, 2008. As a condition of a loan to the Mortgagor on even date, the Mortgagor, an affiliate of the Borrower, and a wholly owned entity of the guarantors of the Loan, agreed to execute this mortgage to secure the Note and the limited recourse guaranty of payment ("**Guaranty**") to guaranty the repayment of the Loan that the Mortgagor executed contemporaneously herewith.

Property Mortgaged.

The property mortgaged to Mortgagee (called the "**Property**") is located in Gloucester County, New Jersey, is designated as Block 14801, Lots 12 and 12Q on the tax map of Monroe Township and is more particularly described on Exhibit "A" attached hereto and made a part hereof. The Property includes: (a) the land; (b) all buildings that are now, or will be, located on the land; (c) all fixtures that are now, or will be, attached to the land or building(s); (d) all condemnation awards and insurance proceeds relating to the land and building(s); and (e) all other rights that Mortgagor has, or will have, as owner of the Property.

Rights Given to Mortgagee.

Mortgagor mortgages the Property to Mortgagee. This means that Mortgagor gives Mortgagee those rights stated in this Mortgage and also those rights the law gives to mortgagees who hold mortgages on real property. When Borrower or Mortgagor pays all amounts due Mortgagee under the Note, the Guaranty and this Mortgage, Mortgagee's rights under this Mortgage will end. Mortgagee will then cancel this Mortgage at Mortgagor's expense.

Promises.

Mortgagor makes the following promises to Mortgagee:

1. Compliance.

Borrower and Mortgagor will comply with all of the terms of the Note, this Mortgage and all of the other loan documents executed in connection therewith ("**Loan Documents**"), to which they are a party, as applicable.



8300557_1
9355008_1

2. <u>Payments</u>.

Borrower will make all payments required by the Note and Mortgage.

3. <u>Ownership</u>.

Mortgagor warrants title to the premises (N.J.S.A. 46:9-2). This means Mortgagor owns the Property and will defend Mortgagor's ownership against all claims.

4. <u>Liens and Taxes</u>.

Mortgagor will pay all liens, taxes, assessments and other government charges made against the Property when due. Mortgagor will not claim any deduction from the taxable value of the Property because of this Mortgage. Mortgagor will not claim any credit against the principal and interest payable under the Note and this Mortgage for any taxes paid on the Property. Mortgagor shall provide to the Mortgagee, upon request, copies of all receipts for payment of all liens, taxes, assessments and other government charges made against the Property. The only liens against the Property are mortgage liens in favor of the Mortgagee.

5. <u>Insurance</u>.

Mortgagor must maintain extended coverage insurance on the Property. Mortgagee may also require that Mortgagor maintain flood insurance, if located in a flood hazard area, or other types of insurance. The insurance companies, policies, amounts and types of coverage must be acceptable to Mortgagee. Mortgagor will notify Mortgagee in the event of any substantial loss or damage. Mortgagee may then settle the claim on Mortgagor's behalf if Mortgagor fails to do so. Mortgagee may use any proceeds to repair and restore the Property or to reduce the amount due under the Note and this Mortgage. This will not delay the due date for any payment under the Note and this Mortgage.

6. <u>Repairs</u>.

Mortgagor will keep the Property in good repair, neither damaging nor abandoning it. Mortgagor will allow Mortgagee to inspect the Property upon reasonable notice to Mortgagor.

7. <u>Statement of Amount Due</u>.

Upon request of Mortgagee, Mortgagor will certify to Mortgagee in writing: (a) the amount due on the Note and this Mortgage, and (b) whether or not Mortgagor has any defense to Mortgagor's obligations under the Note and this Mortgage.

8. <u>Rent</u>.

Mortgagor will not accept rent from any tenant for more than one month in advance.

9. <u>Lawful Use</u>.

Mortgagor will use the Property in compliance with all laws, ordinances and other requirements of any governmental authority.

10. Eminent Domain.

All or part of the Property may be taken by a government entity for public use. If this occurs, Mortgagor agrees that any compensation be given to Mortgagee. Mortgagee may use this to repair and restore the Property or to reduce the amount owed on the Note and this Mortgage. This will not delay the due date for any further payment under the Note and Mortgage. Any remaining balance will be paid to Mortgagor.

11. Tax and Insurance Escrow.

If Mortgagee requests and provided same is not escrowed pursuant to a superior mortgage on the Property, Mortgagor will make regular monthly payments to Mortgagee of (a) 1/12th of the yearly real estate taxes and assessments on the Property; and (b) 1/12th of the yearly cost of insurance on the Property. These payments will be held by Mortgagee without interest to pay the taxes, assessments and insurance premiums as they become due.

12. Payments Made for Mortgagor(s).

If Mortgagor does not make all of the repairs or payments as agreed in this Mortgage, Mortgagee may do so for Mortgagor. The cost of these repairs will be added to the principal, will bear interest at the same rate provided in the Note and will be repaid to Mortgagee upon demand.

13. Default.

Mortgagee may declare that Mortgagor is in default on the Note and this Mortgage if:

(a) Borrower fails to make any payment required by the Note and this Mortgage on its due date;

(b) Borrower or Mortgagor fails to keep any other promise Mortgagor makes in this Mortgage, or Borrower or Mortgagor fails to keep any other promises they made in any of the other Loan Documents, including the Guaranty, which promise is not cured within a commercially reasonable time, not to exceed ten (10) days after notice from the Mortgagee of such failure, provided however that is such default cannot be cured within such ten (10) day period, the Mortgagor shall be afforded up to an additional forty-five (45) days to cure such default, provided such extension does not extend beyond the maturity date of the Note, and provided the Mortgagee has commence to cure such default within the initial ten (10) day period and shall thereafter diligently proceed to cure such default;

(c) The ownership of the Property is changed for any reason;

(d) The holder of any lien on the Property starts foreclosure proceedings;

(e) Bankruptcy, insolvency or receivership proceedings are started by or against any of the Mortgagors; or

(f) Default shall be made by the Borrower or Mortgagor on any indebtedness due Mortgagee.

14. Payments Due Upon Default.

8300557_1
9355008_1

If Mortgagee declares that Mortgagor is in default, Borrower must immediately pay the full amount of all unpaid principal, interest, other amounts due on the Note and this Mortgage and Mortgagee's costs of collection and reasonable attorney fees.

15. Mortgagee's Rights Upon Default.

If Mortgagee declares that the Note, the Guaranty and this Mortgage are in default, Mortgagee will have all rights given by law or set forth in this Mortgage. This includes the right to do any one or more of the following:

(a) Take possession of and manage the Property, including the collection of rents and profits;

(b) Have a court appoint a receiver to accept rent for the Property (Mortgagor consents to this);

(c) Start a court action, known as foreclosure, which will result in a sale of the Property to reduce Mortgagor's obligations under the Note and this Mortgage; or

(d) Sue Mortgagor or Borrower for any money that Mortgagor owes the Mortgagee.

16. Notices.

All notices must be in writing and personally delivered or sent by certified mail, return receipt requested, to the addresses given in this Mortgage. Address changes may be made upon notice to the other party.

17. No Waiver by Mortgagee.

Mortgagee may exercise any right under this Mortgage or under any law, even if Mortgagee has delayed in exercising that right or has agreed in an earlier instance not to exercise that right. Mortgagee does not waive its right to declare that Mortgagor is in default by making payments or incurring expenses on Borrower's or Mortgagor's behalf.

18. Each Person Liable.

This Mortgage is legally binding upon each Mortgagor and all who succeed to their responsibilities (such as heirs and executors). Mortgagee may enforce any of the provisions of the Note and this Mortgage against any one or more of the Mortgagor(s) who sign this Mortgage.

19. No Oral Changes.

This Mortgage can only be changed by an agreement in writing signed by both the Mortgagor(s) and the Mortgagee.

20. Severability.

If any provision of this Mortgage shall be held invalid under any applicable laws, such invalidity shall not affect any other provisions of this Mortgage that can be given effect

without the invalid provision, and, to this end, the provisions hereof are severable. Further, nothing herein shall be deemed to modify any superior mortgage.

21.  Intentionally Deleted.

22.  <u>WAIVER OF JURY TRIAL</u>

MORTGAGOR AND MORTGAGEE, UPON ADVICE FROM THEIR RESPECTIVE COUNSEL, HEREBY INTENTIONALLY, KNOWINGLY, VOLUNTARILY, EXPRESSLY AND MUTUALLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS MORTGAGE OR ANY OTHER DOCUMENTS EVIDENCING THE LOAN, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS MORTGAGE OR ANY OF THE OTHER DOCUMENTS EVIDENCING THE LOAN, OR THE TRANSACTIONS RELATED HERETO OR THERETO, OR (3) IN ANY LITIGATION BETWEEN THE PARTIES, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT OR TORT OR OTHERWISE, AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS MORTGAGE MAY FILE THIS ORIGINAL MORTGAGE OR A

[NO FURTHER TEXT ON THIS PAGE]

COPY THEREOF WITH ANY COURT AS WRITTEN EVIDENCE TO THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO A TRIAL BY JURY.

23. <u>Signatures</u>.

Mortgagor agrees to the terms of this Mortgage.

THIS MORTGAGE IS SUBJECT TO MODIFICATION AS DEFINED BY N.J.S.A. 46:9-8.1 ET SEQ.

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be executed the day and year first above written and acknowledges receipt of a true copy of this Mortgage.

Witness:

_____

_____

Hovbro Fries Mill, L.L.C., a New Jersey limited liability company

By:_____
Stephen Hovnanian, Managing Member

By:_____
Peter Hovnanian, Managing Member

8300557_1
9355008_1

## ACKNOWLEDGEMENT

STATE OF NEW JERSEY        :

: ss.

COUNTY OF BURLINGTON    :

BE IT REMEMBERED that on this ⎯12⎯ day of June, 2012, before me, a Notary Public, personally appeared Stephen Hovnanian and Peter Hovnanian, who acknowledged themselves to be the managing members of Hovbros Fries Mill, L.L.C., the New Jersey limited liability company named in the foregoing instrument, and that they as such managing members, being authorized to do so in accordance with the terms of the Operating Agreement executed and delivered the foregoing document.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
Notary Public

Valerie A. Mason
Notary Public of New Jersey
My Commission Expires Jan. 26, 2014

8300557_1
9355008_1

EXHIBIT "A"

LEGAL DESCRIPTION

File No: 1344CT-01

ALL THAT CERTAIN tract or parcel of land and premises lying, being and situate in Monroe Township, County of Gloucester and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the existing Westerly right-of-way line of Fries Mill Road (County Route #655), perpendicular to and 24.75 feet distant from the centerline thereof, said point being common corner to Lots 12 & 13, Block 14801, and extending from said point of beginning; thence

1. Along the division line of Lot 12, Block 14801 common with Lots 13 & 11, Block 14801, North 47 degrees 54 minutes 05 seconds West, a distance of 1878.88 feet, to an angle point being common corner to Lots 10, 11 & 12, Block 14801; thence

2. Along the division line common to Lots 10 & 12, Block 14801, North 47 degrees 53 minutes 00 seconds West, a distance of 670.80 feet, to a point in the Southerly right-of-way line of Glassboro-Cross Keys Road (County Route #689), perpendicular to and 24.75 feet distant from the centerline thereof; thence

3. Along the Southerly right-of-way line of said Glassboro-Cross Keys Road, running parallel to and 24.75 feet distant from the centerline thereof, South 89 degrees 16 minutes 36 seconds East, a distance of 1709.63 feet, to a point common corner to Lots 12 & 12.02, Block 14801; thence

4. Along the division line common to Lots 12 & 12.02, Block 14801, South 00 degrees 43 minutes 24 seconds West, a distance of 298.34 feet, to an angle point; thence

5. Continuing along the division line common to Lots 12 & 12.02, Block 148.01, South 79 degrees 21 minutes 00 seconds East, a distance of 204.33 feet, to an angle point; thence

6. Continuing along same, South 10 degrees 39 minutes 00 seconds West, a distance of 15.00 feet to angle point; thence

7. Continuing along same, South 79 degrees 21 minutes 00 seconds East, a distance of 216.00 feet, to a point in the widened Westerly right-of-way line of Fries Mill Road, aforesaid; thence

8. Along the widened Westerly right-of-way line of Fries Mill Road, running parallel to and 44.00 feet distant from the centerline thereof, South 10 degrees 39 minutes 00 seconds West, a distance of 83.00 feet to a point; thence

9. South 79 degrees 21 minutes 00 seconds East, a distance of 19.25 feet, to a point in the existing Westerly right-of-way line of said Fries Mill Road; thence

10. Along the existing Westerly right-of-way line of Fries Mill Road, running parallel to and 24.75 feet distant from the centerline thereof, South 10 degrees 39 minutes 00 seconds West, a distance of 1233.28 feet, to the point and place of BEGINNING.

BEING premises No. Glassboro Cross Keys Road.

Block: 14801, Lot: 12 and 12Q

BEING the same land and premises which became vested in Hovbros Fries Mill, L.L.C., a NJ Limited Liability Company, by deed from Steven B. Smith and Christine P. Smith, husband and wife, dated 9/27/2005, recorded 10/6/2005, in the Gloucester County Clerk/Register's Office in Deed Book 4078, Page 80.