# Exhibit "C"

8305782_1

$25,313,875.20
BLOCK 14801, LOTS 12 AND 12QFARM
MONROE TOWNSHIP
GLOUCESTER COUNTY, NEW JERSEY
(STIRLING GLEN II)

RECORD AND RETURN TO:
BRETT WILTSEY, ESQ.
DILWORTH PAXSON LLP
457 HADDONFIELD ROAD, SUITE 700
CHERRY HILL, NEW JERSEY 08002

RECORD & RETURN TO:
Surety Title Co., LLC
11 Eves Drive, Suite 150
Marlton, NJ 08053  ACCOMMODATION

## COLLATERAL MORTGAGE

**THIS COLLATERAL MORTGAGE**, made this 23rd day of November 2015, by **HOVBROS FRIES MILL, LLC**, having offices at 900 Birchfield Drive, Mt. Laurel, NJ 08054 (hereinafter "**Mortgagor**") and **TD Bank, N.A., successor by merger to Commerce Bank, N.A.**, having offices at 1701 Route 70 East, Cherry Hill, NJ 08034 (hereinafter, "**Mortgagee**").

### BACKGROUND

**WHEREAS,** Mortgagee and Mortgagor have a long history of business transactions which total nearly $30 Million Dollars. Attached hereto as Schedule 1 is a list identifying the primary loan documents which evidence the loan transactions and which set forth the Obligors' obligations to the Bank. Collectively, these documents are hereinafter identified as the "**Loan Documents.**"

**WHEREAS,** on August 22, 2014 Mortgagee was granted Final Judgment for Foreclosure against Mortgagor in a foreclosure action entitled _TD Bank, N.A. v. Hovbros Fries Mill, LLC and Hovbros Scranton, LLC, Superior Court of New Jersey, Chancery Division, Gloucester County, Docket No. F-008046-14_ ("**Foreclosure Action**") pertaining to the property located at Block 14801, Lots 12 and 12QFarm, Monroe Township, Gloucester County, New Jersey ("**Property**").

**WHEREAS,** Mortgagee and Mortgagor have entered into an Acknowledgement and Release Agreement dated November 23, 2015 (the "**Agreement**"), wherein Mortgagor has acknowledged their defaults under Loan Documents and Forbearance Agreement, among other things, and has confirmed and acknowledged the existing indebtedness and their obligation to Mortgagee under the Loan Documents.

**WHEREAS,** in connection with the aforesaid Agreement, and in order to secure the amounts due from Mortgagor to Mortgagee under the Loan Documents, the Mortgagor has agreed to execute and deliver this Collateral Mortgage in the principal sum of Twenty-Five Million, Three Hundred Thirteen Thousand, Eight Hundred Seventy-Five Dollars and 20/100 ($25,313,875.20) creating an additional security interest in the Mortgaged Property in favor of Mortgagee ("**Collateral Mortgage**").

**NOW, THEREFORE**, in consideration of the above and of the Loan Documents made by Mortgagor to Mortgagee, and for other good and valuable consideration, the receipt of which is hereby acknowledged, Mortgagor agreed to grant to Mortgagee a mortgage lien in the amount of $25,313,875.20 on the Mortgaged Property by executing this Collateral Mortgage.



118212142_1

Docket: 00045088 Type:MTG Pages:7
James N. Hogan, Gloucester County Clerk
Receipt#:486560    03:31:40P    Nov 25,2015
Recording Fee:    90.00  MB 14507    89

1. **Property Mortgaged**. The Property mortgaged to Mortgagee is located and identified as: Cross Keys Road, Block 14801, Lots 12 and 12QFarm, Monroe Township, Burlington County, New Jersey (Stirling Glen II). The Property includes: (a) the land; (b) all buildings that are now, or will be, located on the land; (c) all fixtures that are now, or will be, attached to the land or building(s) (for example, furnaces, bathroom fixtures and kitchen cabinets); (d) all condemnation awards and insurance proceeds relating to the land and building(s); and (e) all other rights that Mortgagor has, or will have, as owner of the Property. The legal description of the Property is set forth on **Exhibit "A"** attached hereto and made a part hereof.

2. **Rights Given to Mortgagee**. Mortgagor mortgages the Mortgaged Property to Mortgagee. This means that Mortgagor gives Mortgagee those rights stated in this Collateral Mortgage and in the Loan Documents, Forbearance Agreement and Agreement, along with those rights the law gives to mortgagees who hold mortgages on real Mortgaged Property. The Mortgaged Property may be released from this Collateral Mortgage in accordance with the terms of the Note and Agreement.

3. **Promises**. Mortgagor makes the following promises to Mortgagee:

    a. **Agreement and Mortgage**. Mortgagor will comply with all of the terms of the Loan Documents and Agreement, and this Collateral Mortgage.

    b. **Payments**. Mortgagor will make all payments required by the Agreement and this Collateral Mortgage.

    c. **Ownership**. Mortgagor warrants title to the premises. This means Mortgagor owns the Mortgaged Property and will defend Mortgagor's ownership against all claims.

    d. **Liens and Taxes**. Mortgagor will pay all liens, taxes, assessments and other government charges made against the Mortgaged Property when due. Mortgagor will not claim any deduction from the taxable value of the Mortgaged Property because of this Collateral Mortgage. Mortgagor will not claim any credit against the principal and interest payable under the Agreement and this Collateral Mortgage, for any taxes paid on the Mortgaged Property.

    e. **Insurance**. Mortgagor must maintain extended coverage insurance on the Mortgaged Property. Mortgagee may also require that Mortgagor maintain flood insurance or other types of insurance. The insurance companies, policies, amounts and types of coverage must be acceptable to Mortgagee. Mortgagor will notify Mortgagee in the event of any substantial loss or damage. Mortgagee may then settle the claim on Mortgagor's behalf if Mortgagor fails to do so. Mortgagee may use any proceeds to repair and restore the Mortgaged Property or to reduce the amount due under the Note, Loan Documents, Agreement and this Collateral Mortgage. This will not delay the due date for any payment under the Note, Loan Documents, Agreement and this Collateral Mortgage.

118212142_1

f.  **Repairs**. Mortgagor will keep the Mortgaged Property in good repair, neither damaging nor abandoning it. Mortgagor will allow Mortgagee to inspect the Mortgaged Property upon reasonable notice to Mortgagor.

g.  **Lawful Use**. Mortgagor will use the Mortgaged in compliance with all laws, ordinances and other requirements of any governmental authority.

4.  **Eminent Domain**. All or part of the Mortgaged Property may be taken by a government entity for public use. If this occurs, Mortgagor agrees that any compensation be given to Mortgagee. Mortgagee may use this to repair and restore the Mortgaged Property or to reduce the amount owed on the Loan Documents, Agreement and this Collateral Mortgage. This will not delay the due date for any further payment under the Loan Documents, Agreement and this Collateral Mortgage. Any remaining balance will be paid to Mortgagor.

5.  **Payments Made for Mortgagor(s).** If Mortgagor does not make all of the repairs or payments as agreed in this Collateral Mortgage, Mortgagee may do so for Mortgagor. The cost of these repairs will be added to the principal, will bear interest at the same rate provided in the Note and will be repaid to Mortgagee upon demand.

6.  **Default**. Any default by the Mortgagee under the terms or conditions in the Loan Documents and Agreement shall constitute a default under this Collateral Mortgage.

7.  **Payments Due Upon Default.** If Mortgagee declares that Mortgagor is in default, Mortgagor must immediately pay the full amount of all unpaid principal, interest, other amounts due under the Loan Documents, Agreement and this Collateral Mortgage and Mortgagee's costs of collection and reasonable attorney fees.

8.  **Mortgagee's Rights Upon Default.** If Mortgagee declares that the Agreement and this Collateral Mortgage are in default, Mortgagee will have all rights given by law or set forth in the Loan Documents, Agreement and this Collateral Mortgage. This includes the right to do any one or more of the following:

(a)  Take possession of and manage the Mortgaged Property, including the collection of rents and profits;

(b)  Have a court appoint a receiver to accept rent for the Mortgaged Property (Mortgagor consents to this);

(c)  Proceed with the Foreclosure Action, which will result in a sale of the Mortgaged Property to reduce Mortgagor's obligations under the Loan Documents, Agreement and this Collateral Mortgage;

(d)  Sue Mortgagor for any money that Mortgagor owes the Mortgagee;

(e)  Enforce any other remedy provided for in the Loan Documents and Agreement.

3

9. **Notices**. All notices must be in writing and personally delivered or sent by certified mail, return receipt requested, to the addresses given in this Collateral Mortgage. Address changes may be made upon notice to the other party.

10. **No Waiver by Mortgagee**. Mortgagee may exercise any right under this Collateral Mortgage or under any law, even if Mortgagee has delayed in exercising that right or has agreed in an earlier instance not to exercise that right. Mortgagee does not waive its right to declare that Mortgagor is in default by making payments or incurring expenses on Mortgagor's behalf.

11. **No Oral Changes.** This Collateral Mortgage can only be changed by an agreement in writing signed by both the Mortgagor(s) and the Mortgagee.

12. **Severability**. If any provision of this Collateral Mortgage shall be held invalid under any applicable laws, such invalidity shall not affect any other provisions of this Collateral Mortgage that can be given effect without the invalid provision, and, to this end, the provisions hereof are severable.

13. **Waiver Of Jury Trial**

**MORTGAGOR AND MORTGAGEE, UPON ADVICE FROM THEIR RESPECTIVE COUNSEL, HEREBY INTENTIONALLY, KNOWINGLY, VOLUNTARILY, EXPRESSLY AND MUTUALLY WAIVE ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION OR CAUSE OF ACTION (1) ARISING UNDER THIS COLLATERAL MORTGAGE OR ANY OTHER DOCUMENTS EVIDENCING THE LOAN, OR (2) IN ANY WAY CONNECTED WITH OR RELATED OR INCIDENTAL TO THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS COLLATERAL MORTGAGE OR ANY OF THE OTHER DOCUMENTS EVIDENCING THE LOAN, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING AND WHETHER IN CONTRACT OR TORT OR OTHERWISE, AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY, AND THAT ANY PARTY TO THIS COLLATERAL MORTGAGE MAY FILE THIS ORIGINAL COLLATERAL MORTGAGE OR A COPY THEREOF WITH ANY COURT AS WRITTEN EVIDENCE TO THE CONSENT OF THE PARTIES HERETO TO THE WAIVER OF THEIR RIGHT TO A TRIAL BY JURY.**

[SIGNATURES ON FOLLOWING PAGE]

118212142_1

IN WITNESS WHEREOF, Mortgagor has caused this Collateral Mortgage to be executed the day and year first above written and acknowledges receipt of a true copy of this Collateral Mortgage and the Note.

HOVBROS FRIES MILL, LLC

By: _____
Stephen Hovnanian, Managing Member

By: _____
Peter Hovnanian, Managing Member

STATE OF NEW JERSEY    )
                       :SS
COUNTY OF Monmouth     )

On this 23rd day of November 2015, before me, a Notary Public, personally appeared Stephen Hovnanian and Peter Hovnanian, each and made known to me and satisfactorily proved to be the Managing Members of HOVBROS FRIES MILL, LLC, and being authorized to do so, executed the foregoing instrument for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and seal.

_____
Notary Public

CARL R. SAMSON
ATTORNEY AT LAW
STATE OF NEW JERSEY

5

118212142_1

## SCHEDULE 1

### BANK INDEBTEDNESS†

| Loan | Loan Number |
|---|---|
| Cinnaminson Note | 1820364-0101 |
|  | 1820364-0102 |
| Roesville Notes | 34461 |
|  | 34455 |
| JSP Note | 1848878-9007 |
| Burlington/JSP Note | 1240589-9002 |
| Scranton/Fries Mill Note | 1358910-9001 |

†Attorney's Fees and Costs incurred by Bank through 10/28/2015: **$283,236.59**

Total Indebtedness due to Bank as of 10/30/2015: **$25,313,875.20** (not including Attorney's Fees and Costs)

NOTE: All balances are subject to adjustment and to be increased by attorney fees, expenses, late fees, etc.

DOCKET# 00045088

# EXHIBIT "A"
## LEGAL DESCRIPTION – STIRLING GLEN II TRACT

ALL THAT CERTAIN tract or parcel of land and premises lying, being and situate in Monroe Township, County of Gloucester, and State of New Jersey being more particularly described as follows:

BEGINNING at a point in the existing Westerly right-of-way line of Fries Mill Road (County Route #655), perpendicular to and 24.75 feet distant from the centerline thereof, said point being common corner to Lots 12 & 13, Block 14801, and extending from said point of beginning; thence

1. Along the division line of Lot 12, Block 14801 common with Lots 13 & 11, Block 14801, North 47 degrees 54 minutes 05 seconds West, a distance of 1878.88 feet, to an angle point being common corner to Lots 10, 11 & 12, Block 14801; thence

2. Along the division line common to Lots 10 & 12, Block 14801, North 47 degrees 53 minutes 00 seconds West, a distance of 670.80 feet, to a point in the Southerly right-of-way line of Glassboro-Cross Keys Road (County Route #689), perpendicular to and 24.75 feet distant from the centerline thereof; thence

3. Along the Southerly right-of-way line of said Glassboro-Cross Keys Road, running parallel to and 24.75 feet distant from the centerline thereof, South 89 degrees 16 minutes 36 seconds East, a distance of 1709.63 feet, to a point common corner to Lots 12 & 12.02, Block 14801; thence

4. Along the division line common to Lots 12 & 12.02, Block 14801, South 00 degrees 43 minutes 24 seconds West, a distance of 298.34 feet, to an angle point; thence

5. Continuing along the division line common to Lots 12 & 12.02, Block 148.01, South 79 degrees 21 minutes 00 seconds East, a distance of 204.33 feet, to an angle point; thence

6. Continuing along same, South 10 degrees 39 minutes 00 seconds West, a distance of 15.00 feet to angle point; thence

7. Continuing along same, South 79 degrees 21 minutes 00 seconds East, a distance of 216.00 feet, to a point in the widened Westerly right-of-way line of Fries Mill Road, aforesaid; thence

8. Along the widened Westerly right-of-way line of Fries Mill Road, running parallel to and 44.00 feet distant from the centerline thereof, South 10 degrees 39 minutes 00 seconds West, a distance of 83.00 feet to a point; thence

9. South 79 degrees 21 minutes 00 seconds East, a distance of 19.25 feet, to a point in the existing Westerly right-of-way line of said Fries Mill Road; thence

10. Along the existing Westerly right-of-way line of Fries Mill Road, running parallel to and 24.75 feet distant from the centerline thereof, South 10 degrees 39 minutes 00 seconds West, a distance of 1233.28 feet, to the point and place of BEGINNING.

BEING premises No. Glassboro Cross Keys Road.

Block: 14801, Lot: 12 and 12Q

BEING the same land and premises which became vested in Hovbros Fries Mill, L.L.C., a NJ Limited Liability Company, by deed from Steven B. Smith and Christine P. Smith, husband and wife, dated 9/27/2005, recorded 10/6/2005, in the Gloucester County Clerk/Register's Office in Deed Book 4078, Page 80.

118212142_1